IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                  *
TODD R. MEYER, et al.,
                                  *
      Plaintiffs,
                                  *
          v.
                                  *      CIVIL NO.: WDQ-14-00032
VANTIUM CAPITAL, INC.,
                                  *
      Defendant.
                                  *
```

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Todd R. Meyer and Susan H. Meyer ("the Plaintiffs") sued
Vantium Capital, Inc. d/b/a Acqura Loan Services ("Vantium") in
the Circuit Court for Baltimore County, Maryland, for fraud and
contract claims in connection with a mortgage loan on the
Plaintiffs' property.  On January 6, 2014, Vantium removed the
case to this Court based on diversity jurisdiction.  Pending is
Vantium's motion to dismiss the complaint.  No hearing is
necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the
following reasons, the motion will be granted in part and denied
in part.

I. Background[1]

On May 11, 2007, Susan H. Meyer obtained a mortgage on the property at 1428 Ivy Hill Road, Cockeysville, Maryland ("the Property"), from GreenPoint Mortgage Funding, Inc. for $600,000.00. ECF No. 6-3 ¶ 6. To secure the loan, Mrs. Meyer signed a Note, and the Plaintiffs together signed a Deed of Trust. *Id.* The current servicer for the loan is Vantium. ECF No. 6-3 ¶ 7.

In June 2009, Mrs. Meyer defaulted on the loan. ECF No. 6-12 at 5. On May 16, 2011, the Plaintiffs filed for a loan modification with Vantium. ECF No. 6-3 ¶ 9. On October 31, 2011, Vantium confirmed that it would process the Plaintiffs' application under the Home Affordable Modification Program ("HAMP").[2] ECF No. 6-8 at 3.

_____

[1] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] In loan modifications under HAMP, the loan servicer first performs a Net Present Value ("NPV") test to determine if modifying the loan would be more profitable than foreclosure. *See, e.g., Allen v. CitiMortgage,* Civil No. CCB-10-2740, 2011 WL 3425665, at *1 (D. Md. Aug. 4, 2011). If the NPV test indicates that modification is more profitable than foreclosure, "the servicer MUST offer the mortgagor a modification." U.S. Dep't of the Treasury, Home Affordable Modification Program Supplemental Directive 09-01 (Apr. 6, 2009); *see Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 556-57 (7th Cir. 2012). The

When Vantium performed the NPV test on the Property, the outstanding principal balance on the mortgage was $599,800.00, and Vantium valued the Property at $615,000.00.  ECF No. 6-3 ¶ 11.  In a December 21, 2011 letter, Vantium informed the Plaintiffs that the NPV test on the Plaintiffs' property produced a negative result; thus, Vantium was unable to offer a HAMP modification.  ECF No. 6-9 at 3.

In the December Letter, Vantium also stated:

> You have 30 calendar days from the date of this letter to provide us with written evidence that one or more of the NPV input values is inaccurate. . . .  If your written evidence identifies material inaccuracies in the NPV input values, we will not conduct a foreclosure sale until the inaccuracies are reconciled.  If your written evidence is valid and material to the NPV outcome, we will re-perform the NPV evaluation with the corrected input values. Following the re-evaluation, we will provide you with the updated NPV outcomes and input values.
>
> If you believe that the "Property Value" input used in the NPV evaluation differs from the fair market value of your home, you must provide us with a recent estimate of the property value and a reasonable basis for that estimate at the same time that you provide evidence of any other disputed NPV value inputs.  We will then perform a test using your estimated value. If the test provides an NPV positive outcome, you have the right to request that we obtain an appraisal to confirm the value of your home and use that appraised value to conduct a new NPV evaluation. . . .

---

modification begins with a three-month Trial Period Plan ("TPP").  *See Allen*, 2011 WL 3425665, at *1.

Following the TPP, the servicer provides permanent modification if the mortgagor complied with the TPP and other conditions.  *See Wigod*, 673 F.3d at 557.

ECF No. 6-9 at 3.  On January 8, 2012, the Plaintiffs obtained an appraisal of the Property which calculated its fair market value as $535,000.00.  ECF No. 6-3 ¶ 16; ECF No. 6-11 at 4.  The Plaintiffs paid $425.00 for the new appraisal.  ECF No. 6-3 ¶ 16.  The Plaintiffs sent the appraisal to Vantium for a new NPV evaluation.  *See* ECF No. 6-3 ¶ 17.  Vantium never performed a new NPV test.  *See* ECF No. 6-3 ¶ 18.

On May 16, 2012, GreenPoint Mortgage assigned the Note and Deed of Trust to J.P. Morgan Mortgage Acquisition Corp.  ECF No. 6-6 at 3-5.  On June 21, 2012, the Substitute Trustees of the Deed of Trust initiated a foreclosure suit against the Plaintiffs.  ECF No. 6-13 at 37.

On November 22, 2012, the Plaintiffs sued Vantium in the Circuit Court for Baltimore County, Maryland.  ECF No. 2.  On January 6, 2014, Vantium removed the case to this Court.  ECF No. 1.  On January 13, 2014, Vantium moved to dismiss the complaint.  ECF No. 9.  On January 30, 2014, the Plaintiffs responded.  ECF No. 12.  On February 18, 2014, Vantium replied. ECF No. 13.

## II. Analysis

### A. Legal Standard

#### 1. Lack of Standing

The plaintiff bears the burden of proving subject matter jurisdiction. *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).  When, as here, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction challenges the sufficiency of the allegations in the complaint -- and not their truth -- the allegations are assumed to be true, and "the plaintiff, in effect is afforded the same procedural protections as he would receive" on a motion to dismiss "under . . . Rule 12(b)(6)." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

#### 2. Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

3. Particularity Requirement for Fraud Allegations

Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity." The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 799

(D. Md. 1998).   To satisfy the rule, a plaintiff must "identify with some precision the date, place, and time of active misrepresentations or the circumstances of active concealments, specifying which Defendant . . . is supposedly responsible for those statements or omissions."   *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

The Court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."   *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

B. Vantium's Motion to Dismiss

Vantium seeks dismissal of all counts because HAMP does not provide a private cause of action.   ECF No. 9-1 at 16.   Vantium also asserts that the Plaintiffs' five individual claims fail. ECF No. 9-1 at 9.

1. Private Right of Action Under HAMP

Vantium argues under Rule 12(b)(1) that the Plaintiffs lack standing because HAMP does not provide a private cause of action.   ECF No. 9-1 at 16.   Vantium also asserts that the Plaintiffs' state law claims are attempts to disguise enforcement of HAMP and its guidelines.   ECF No. 9-1 at 18.   The

Plaintiffs argue that, even though Vantium's actions occurred in connection with HAMP, Vantium is not shielded from state tort liability. ECF No. 12-1 at 4.

Vantium is correct that there is no private right of action under HAMP. *See, e.g., Allen v. CitiMortgage,* Civil No. CCB-10-2740, 2011 WL 3425665, at *4 (D. Md. Aug. 4, 2011). However, Vantium is not "wholly immunized for [its] conduct so long as the subject of the transaction is associated with HAMP." *Vida v. OneWest Bank, FSB,* Civ. No. 10-987-AC, 2010 WL 5148473, at *5 (D. Or. Dec. 13, 2010). State law claims may be proper vehicles for bringing claims associated with HAMP.[3] The Court will analyze each of the Plaintiffs' state law claims. *See Farasat v. Wells Fargo Bank, N.A.,* 913 F. Supp. 2d 197, 203 (D. Md. 2012); *Legore v. OneWest Bank, FSB,* 898 F.Supp.2d 912, 917-18 (D. Md. 2012).

    2. Individual Claims in the Complaint

        a.   Count I: Detrimental Reliance and Count II: Breach of Contract

The Plaintiffs argue that the December Letter from Vantium created an enforceable contract under which Vantium promised to perform a new NPV test if Plaintiffs provided an appraisal for the Property's value. *See ECF No. 6-3 at 13-14.* The Plaintiffs

---

[3] *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 555 (7th Cir. 2012) ("HAMP and its enabling statute do not contain a federal right of action, but neither do they preempt otherwise viable state-law claims."); *Allen,* 2011 WL 3425665, at *5.

also assert that, even if the December Letter is not a contract, the December Letter contains a clear and definite promise on which the Plaintiffs detrimentally relied. *See* ECF No. 6-3 at 11. Vantium contends that the Plaintiffs failed to allege a proper offer, consideration, or damages. *See* ECF No. 9-1 at 19.

The doctrine of detrimental reliance provides an avenue of recovery for plaintiffs when there is a failure of the traditional contract elements. *See Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600, 606 (2000). Thus, the Court will analyze the breach of contract claim first.

### i.   Breach of Contract

Vantium asserts that the lack of a TPP agreement is fatal to the Plaintiffs' claim. *See* ECF 9-1 at 19, 21-22. Courts have consistently held that plaintiffs cannot allege a breach of contract claim based on a servicer's offer to engage in the loan modification process.[4] These cases state that the original

---

[4] *See, e.g., See* Goss v. Bank of America, 917 F. Supp. 2d 445, 449 (D. Md. 2013) ("Where a homeowner has not entered into any [TPP] agreement under HAMP, however, private plaintiffs have no cause of action to enforce HAMP guidelines on behalf of the federal government or as a third-party beneficiary of the HAMP participation agreement between the federal government and the mortgage servicer."); *Spaulding v. Wells Fargo Bank*, 920 F. Supp. 2d 614, 618 (D. Md. 2012) ("The applicable case law is clear that, absent a TPP Agreement, a suit that seeks the general enforcement of the HAMP guidelines must fail."); *Ramos v. Bank of America*, No. DKC 11-3022, 2012 WL 1999867, at *3 (D. Md. June 4, 2012) ("By disregarding the allegation that a TPP

communications by servicers are merely solicitations to engage in the modification process, and no offer forming the basis of a contract occurs until their TPP agreement.[5]

In previous cases, the plaintiffs alleged that the servicer's offer to process paperwork created a contract to provide the plaintiffs with a loan modification. *See, e.g.*, *See* Goss v. Bank of America, 917 F. Supp. at 448-49. Here, the Plaintiffs claim a lack of a TPP agreement and permanent modification are parts of their *damages*,[6] but they do not assert that the December Letter was an offer for a permanent modification. Rather, the Plaintiffs contend that the December Letter was a unilateral offer to perform a new NPV test if the Plaintiffs complied with the appraisal requirements, and the Plaintiffs accepted the offer by purchasing the appraisal, forming a contract that Vantium breached by failing to perform a new test. *See* ECF No. 6-3 ¶¶ 35-40. Thus, the Plaintiffs' breach of contract claim

---

exists and seeking a preliminary loan modification, these claims are, in effect, attempting to enforce the HAMP guidelines. They must therefore be dismissed because there is no private right of action to enforce HAMP.").

[5] *See* Goss v. Bank of America, 917 F. Supp. at 449 ("When a homeowner enters into a TPP under HAMP, that agreement may create legally enforceable contractual rights."); *Allen*, 2011 WL 3425665, at *5 ("[E]ven if a private right of action does not exist under HAMP, the [plaintiffs] may be permitted to assert a breach of contract claim stemming from the TPP Agreement as long as they have stated a proper claim in their amended complaint.").

[6] *See* ECF No. No. 6-3 ¶ 43.

will survive a Rule 12(b)(6) motion absent a TPP agreement if the Plaintiffs have properly alleged that the December Letter has all the elements of a contract.

In Maryland, contract formation requires an offer, acceptance, and consideration. *See Peer v. First Federal Sav. & Loan Ass'n of Cumberland*, 331 A.2d 299, 301 (Md. 1975). An offer is a manifestation of willingness to enter into a contract and must have sufficiently definite terms. *See Md. Supreme Corp. v. Blake Co.*, 369 A.2d 1017, 1023-24 (Md. 1977).

The December Letter attached to the complaint states:

> If you believe that the "Property Value" input used in the NPV evaluation differs from the fair market value of your home, you must provide us with a recent estimate of the property value and a reasonable basis for that estimate . . . . **We will then perform a test using your estimated value.** If the test provides an NPV positive outcome, you have the right to request that we obtain an appraisal to confirm the value of your home and use that appraised value to conduct a new NPV evaluation. . . .

ECF No. 6-9 at 3 (emphasis added). Vantium's statement that it would perform a new NPV test if provided with a different and reasonable property estimate satisfies the Plaintiffs' burden to allege an offer. *See Wigod*, 673 F.3d at 561-65 (finding that a promise to provide a permanent loan modification if the plaintiff completed certain acts contained in a TPP agreement was a sufficiently alleged offer).

Vantium next contends that there was no consideration, because the Plaintiffs only performed acts that they were obligated to perform absent the December Letter.  *See* ECF No. 9-1 at 22; *Allen,* 2011 WL 3425665, at *6 (stating that modified loan payments do not constitute consideration).  Consideration is a bargained for exchange consisting of "a benefit to the promisor or a detriment to the promisee." *See Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003).

The Plaintiffs' assertion that they purchased an appraisal for the Property and were prepared to finance a second appraisal by Vantium in exchange for Vantium's promise to perform a new NPV test alleges sufficient consideration to survive Vantium's motion to dismiss.  ECF No. 6-3 ¶¶ 35-40; *see Wigod*, 673 F.3d at 563-64; *Allen,* 2011 WL 3425665, at *6.

The Plaintiffs allege that the December Letter contained a sufficiently definite offer by Vantium to perform a new NPV test;[7] the Plaintiffs accepted the offer by purchasing an appraisal for the Property and submitting the appraisal to Vantium;[8] paying for the appraisal was consideration;[9] and Vantium breached the contract by failing to perform a new NPV test, ECF No. 6-3 ¶¶ 39-40.  Accordingly, the Plaintiffs have

---

[7] ECF No. 6-3 ¶¶ 324-35.

[8] ECF No. 6-3 ¶ 36.

[9] ECF No. 6-3 ¶ 37.

sufficiently alleged a breach of contract claim separate from the general enforcement of HAMP and its guidelines.  Vantium's motion to dismiss Count II will be denied.

### ii.  Detrimental Reliance

Vantium argues that the Plaintiffs' detrimental reliance claim must fail because Vantium never made a clear and definite promise, and the complaint does not show sufficient detrimental reliance.  *See* ECF No. 9-1 at 22-23.  The Plaintiffs assert that the December Letter contains a definite promise by Vantium to perform a new NPV test and, by relying on that promise, the Plaintiffs purchased a Property appraisal, and declined other opportunities to mitigate their losses, including obtaining counsel, submitting to foreclosure, or restructuring their debt under Chapter 13 of the Bankruptcy Code.  *See* ECF No. 6-3 ¶¶ 26-30.

To establish a claim for detrimental reliance, the Plaintiffs must allege "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise."  *Citiroof Corp. v. Tech Contracting Co.*, 860 A.2d 425, 432 (Md. Ct. Spec. App. 2004).

13

Although Vantium asserts that there was no clear or definite promise to provide a loan modification,[10] for reasons discussed above,[11] the Plaintiffs sufficiently alleged a definite promise to perform a new NPV test.

Additionally, the complaint sufficiently alleges the other elements of detrimental reliance.  The December Letter states that a mortgagor must provide evidence to Vantium for Vantium to perform a new NPV test.  Thus, it is foreseeable that a mortgagor will pursue an appraisal of the property based on the letter.[12]  Further, the Plaintiffs purchased a property appraisal and, did not pursue other loss mitigation options while awaiting the new NPV test.[13]

For these reasons, Vantium's motion to dismiss Count I of the complaint will be denied.

---

[10] *See* ECF No. 9-1 at 22.

[11] *See* *supra* Part II.B.2.a.i.

[12] *Cf*. Green, 927 F. Supp. 2d at 255-56 (holding that foregoing other loss mitigation opportunities and mental anguish did not constitute reasonable reliance when the servicer sent the plaintiffs a letter offering to engage in the loan modification process, and the plaintiffs did not allege that "[d]efendant specifically directed them to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior . . .".)

[13] *See Allen v. CitiMortgage,* 2011 WL 3425665, at *8 (finding that by relinquishing other remedies to mitigate their losses in reliance on a servicer's promise to offer permanent loan modification, plaintiffs sufficiently alleged detrimental reliance).

  b. Count III: Violations of the Maryland Consumer
    Protection Act

The Plaintiffs allege two statements by Vantium violate the

Maryland Consumer Protection Act ("MCPA").  ECF No. 6-3 ¶¶ 49,

51.  Vantium asserts that its statements were not misleading,

and the Plaintiffs failed to allege damages sufficient to

satisfy MCPA requirements.  *See* ECF No. 9-1 at 24-25.

  To state a claim under the MCPA, the Plaintiffs must allege

"(1) an unfair or deceptive practice or misrepresentation that

(2) is relied upon, and (3) causes [them] actual injury."

*Stewart v. Bierman,* 859 F.Supp.2d 754, 768 (D. Md.2012) (*citing*

*Lloyd v. Gen. Motors Corp.,* 916 A.2d 257, 277 (Md. 2007)).

  The Plaintiffs allege two misrepresentations which must be

analyzed under Fed. R. Civ. P. 9(b).  *See Spaulding v. Wells*

*Fargo Bank,* Civ. No. GLR-11-2733, 2012 WL 3025116, at *6 (D. Md.

July 23, 2012).  The first alleged misrepresentation is

Vantium's filing for foreclosure on the Property before

performing the second NPV test because Vantium was attempting to

enforce a right that did not exist.  *See* ECF 6-3 ¶ 51.  The

right to initiate a foreclosure action arose when Mrs. Meyer

defaulted on the Note in June 2009.  ECF No. 6-12 at 5.

Vantium's exercise of that right is not a misrepresentation.

*See Stoval v. SunTrust Mort., Inc.,* No. RDB-10-2836, 2011 WL

4402680, at *9 (D. Md. Sept. 20, 2011).

The second alleged statement -- contained in the December Letter -- asserts that Vantium would perform a new NPV test if the Plaintiffs provided "a recent estimate of the property value and a reasonable basis for that estimate." *See* ECF 6-3 ¶ 49; ECF No. 6-9 at 3.  The Plaintiffs allege that Vantium made this statement with no intent to perform a second NPV test even if the Plaintiffs provided a recent estimate.  *Id.*

A promise to act may constitute actionable fraud if the promisor made the promise "with the present intent not to perform it." *See Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 603 A.2d 1301, 1328 (Md. Ct. Spec. App. 1992).  Fraudulent intent may be alleged generally.  *See* Fed. R. Civ. P. 9(b); *Wigod*, 673 F.3d at 569.

By alleging a specific time, place, and content of the alleged fraud, as well as asserting that the promise was made with fraudulent intent, the Plaintiffs have sufficiently alleged a misrepresentation.[14]

---

[14] *See Harrison*, 176 F.3d at 784 (The Court "should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."); Goss v. Bank of America, N.A., 917 F. Supp. 2d at 450 (D. Md. 2013) (holding that a statement in a letter that induced the plaintiffs to take a different course of action was not false because "it did not state *definitively* that BANA would offer the [plaintiffs] a TPP") (emphasis added); *Ramos*, 2012 WL 1999867, at *4 (dismissing a MCPA claim because

Vantium further argues that there were insufficient MCPA detrimental reliance or damages alleged in the complaint. *See* ECF No. 9-1 at 25-26. As the Plaintiffs' allegations of detrimental reliance are sufficient,[15] the Court will address damages.

The MCPA requires a plaintiff to establish "the nature of the actual injury or loss that he or she allegedly sustained as a result of the prohibited practice." *Lloyd*, 916 A.2d at 280 (quoting *Citaramanis v. Hallowell*, 613 A.2d 964, 968 (Md. 1992)).

The Plaintiffs contend that their reliance on Vantium's promise to perform a new NPV test caused them "undue stress from fear of losing their home . . . [which] has manifested physically through nausea, vomiting, headaches, sleep loss, and other physical symptoms." ECF No. 6-3 ¶ 23. The Plaintiffs allege no other damages in their MCPA claim. *See* ECF No. 6-3 ¶ 23.

Physical symptoms of mental anguish can support a MCPA claim. *See Green*, 927 F. Supp. 2d at 256 (mental anguish can be sufficient to establish MCPA liability); *Allen*, 2011 WL 3425665, at *9 (the plaintiffs alleged sufficient damages under MCPA

---

the complaint did not provide the time, place, or content of the alleged fraud).

[15] *See supra* Part II.B.2.a.ii.

included "emotional damages"). D. Md. Aug. 4, 2011). However, if the mental anguish arose from the plaintiff's decisions before the loan servicer's statement, and the servicer does not "specifically direct[] them to do, or to refrain from doing, anything that adversely affected the state of affairs that existed prior to the alleged misrepresentations," the mental anguish does not satisfy the MCPA's damage requirement.[16]

Here, the Plaintiffs initiated their mental anguish by defaulting on the loan. *See id*. The December Letter, however, did cause the Plaintiffs to obtain an appraisal on the Property and wait for Vantium to perform a new NPV test. *See* ECF No. 9-12 at 3. Thus, mental anguish while the Plaintiffs waited for the NPV test or caused by Vantium's failure to perform the test arguably satisfies the MCPA's damage element. *See Allen*, 2011 WL 3425665, at *9 (emotional damages could support a MCPA claim based on servicer's contractual representations even though the plaintiffs had previously defaulted on the loan).

Plantiffs have alleged sufficient facts to support their MCPA claim. Vantium's motion to dismiss this claim will be denied.

---

[16] *See Green*, 927 F. Supp. 2d at 256 (finding plaintiffs' mental anguish relating to the foreclosure on their home insufficient to support MCPA liability because plaintiffs caused the default on the loan, and the servicer made no promise of a permanent loan modification, only that it would begin the modification process).

      c.    Count IV: Negligence

The Plaintiffs allege that Vantium owed them a tort duty as their mortgage servicer and breached that duty by failing to perform the second NPV test. ECF No. 6-3 ¶ 55-59. Vantium asserts that it owed the Plaintiffs no duty and that, even if it did, the Plaintiffs failed to allege sufficient damages. ECF No. 9-1 at 26.

To state a claim for negligence, the Plaintiffs must allege that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach. *Rosenblatt v. Exxon Co.*, 642 A.2d 180, 188 (Md. 1994).

It is well established that the relationship between a bank and a borrower is contractual and not fiducial. *Yousef v. Trustbank Savs.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990). "Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker v. Columbia Bank,* 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992).

The Plaintiffs contend that Vantium owed them a duty under *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756 (1986). ECF No. 12-1 at 7. In *Jacques*, a case involving an unusually

19

structured bank loan application, the Maryland Court of Appeals held that a contract may give rise to a bank's tort duty to a loan applicant. *See Jacques*, 515 A.2d at 762. However, the *Jacques* court recognized that a negligent breach of contract without an independent obligation, "is not enough to sustain an action sounding in tort." *Id.* at 759 (*quoting Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)). Courts have consistently held that *Jacques* is a very narrow exception. *See, e.g.*, *Spaulding*, 920 F. Supp. 2d at 621 ("The United States Court of Appeals for the Fourth Circuit has interpreted this exception to apply only to vulnerable parties.") (citing *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293-94 (4th Cir.2002)).

In this case, although the Plaintiffs have properly alleged contractual privity with Vantium through the December Letter,[17] the Plaintiffs have failed to allege sufficient special circumstances creating a fiduciary relationship. *See Allen*, 2011 WL 3425665, at *8.

The Plaintiffs' negligence claim will be dismissed.

d.   Count V: Injunctive Relief

Because a number of the Plaintiffs' claims remain, the Court will deny Vantium's motion to dismiss this count.

---

[17] The mortgage Deed of Trust does not create sufficient contractual privity to support a fiduciary relationship; a separate contract is required. *See Green*, 927 F. Supp. 2d at 252-53; *Spaulding*, 920 F. Supp. 2d at 621.

III. Conclusion

For the reasons stated above, Vantium's motion to dismiss the complaint will be granted in part and denied in part.

_8/27/14_
Date

_____
William D. Quarles, Jr.
United States District Judge

21